**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

MINDY JAYE ZIED,

    Plaintiff,

        v.

JO ANNE BARNHART, COMM'R SOCIAL
SECURITY ADMINISTRATION; SOCIAL
SECURITY ADMINISTRATION; MR.
HAWKSWORTH, SSA EMPLOYEE; MS.
SHOPP, SSA EMPLOYEE; J.A. BREEN,
SSA EMPLOYEE; and ANY OTHER
UNKNOWN AND UNNAMED
INDIVIDUALS WHO MAY BE LIABLE,

    Defendants.

CIVIL ACTION NO. 3:06-CV-2305

(JUDGE CAPUTO)

(MAGISTRATE JUDGE BLEWITT)

## <u>MEMORANDUM</u>

Presently before the Court are Magistrate Judge Thomas M. Blewitt's Report and Recommendation ["R&R"] (Doc. 29), Plaintiff Mindy Jaye Zied's Objections thereto (Doc. 59), and Plaintiff's "Motion for Possible Alternative Relief" (Doc. 57). The Magistrate Judge recommended that the Court grant Defendants' Motion to Dismiss (Doc. 19) with respect to all claims except those FOIA claims in Count IV that arose from Plaintiff's August 2002 requests for information. The Magistrate Judge also recommended that the Court dismiss without prejudice Plaintiff's "Motion for Judgment in Her Favor Against All Defendants" (Doc. 22). For the reasons that follow, the Court will adopt the Magistrate Judge's Report and Recommendation, grant Defendants' Motion to Dismiss all claims except the FOIA claims in Count IV arising from Plaintiff's August 2002 requests, and deny Plaintiff's Motion for Judgment. The Court will also deny Plaintiff's Motion for Possible Alternative Relief.

**BACKGROUND**

Plaintiff Mindy Jaye Zied brings this civil rights action against former Commissioner of the Social Security Administration Jo Anne B. Barnhart in her individual and official capacities; the SSA; SSA employees Mr. Hawksworth, Mrs. Schopp, and J.A. Breen in their individual capacities; and against "any other unknown and unnamed individuals who may be liable on the claims stated herein, in their individual and/or official capacities while working as federal employees. . . ." (Compl., Doc. 1.)  Plaintiff alleges violations of Section 504 of the Rehabilitation Act of 1973, (Count I), the Privacy Act of 1974 (Count III), and the Freedom of Information Act ("FOIA") (Count IV).  Plaintiff also brings *Bivens* claims asserting her rights under the Due Process Clause of the Fifth Amendment to the United States Constitution (Count II), the First Amendment to the United States Constitution (Count VI), and FOIA (Count V).  (Compl., Doc. 1; R&R, Doc. 29, at 2-3.)

Defendants filed a Motion to Dismiss (Doc. 19) all of Plaintiff's claims.  In support, Defendants argue that all the claims are time-barred; Defendants state that the claims should also be dismissed on substantive grounds but that they have confined their brief to timeliness arguments "[i]n the interest of brevity," and would, should the Court desire it, file a supplemental brief addressing the substantive grounds for their motion.  (Br. in Supp., Doc. 20, at 2 & n.3.)  Magistrate Judge Blewitt concluded that the applicable statutes of limitations bar all claims except Plaintiff's FOIA claims based on August 2002 requests, and that neither equitable estoppel, continuing violation, nor fraudulent concealment theories justify equitably tolling the statutes of limitations.  (R&R, Doc. 29.)  The Magistrate Judge thus recommended granting Defendants' motion with respect to all claims except the FOIA claims that arose from Plaintiff's August 2002 requests for

2

information.  (*Id.* at 26-27.)  The Magistrate Judge recommended recommitting the case

to him for further proceedings regarding these claims.  (*Id.* at 27.)

        Plaintiff filed a "Motion for Judgment in Her Favor Against All Defendants" (Doc.

22), in which she expressed her opposition to Defendants' motion to dismiss and to which

she attached many exhibits.  The Magistrate Judge recommended this Court deny this

motion as premature at the pleading stage.  Plaintiff 's Objections are fully briefed and

ripe for disposition.


## STANDARDS OF REVIEW

**I.      Review of Magistrate Judge's Report and Recommendation**

        Where objections to the magistrate judge's report are filed, the Court must conduct

a *de novo* review of the contested portions of the report, *Sample v. Diecks*, 885 F.2d

1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(C)), provided the objections

are both timely and specific, *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984).  In making its

*de novo* review, the Court may accept, reject, or modify, in whole or in part, the factual

findings or legal conclusions of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1); *Owens

v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993).  Although the review is *de novo*, the

statute permits the Court to rely on the recommendations of the magistrate judge to the

extent it deems proper.  *See United States v. Raddatz*, 447 U.S. 667, 675-76 (1980);

*Goney*, 749 F.2d at 7; *Ball v. United States Parole Comm'n*, 849 F. Supp. 328, 330 (M.D.

Pa. 1994).  Uncontested portions of the report may be reviewed at a standard determined

by the district court.  *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Goney*, 749 F.2d at

7.  At the very least, the Court should review uncontested portions for clear error or manifest injustice.  *See, e.g., Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).


## II.      Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, Plaintiff has not plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. ----, 127 S.Ct. 1955, 1960, 167 L.Ed.2d 929 (2007), meaning, enough factual allegations "to raise a reasonable expectation that discovery will reveal evidence of" each necessary element.  *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (requiring complaint to set forth information from which each element of a claim may be inferred).  In light of Federal Rule of Civil Procedure 8(a)(2), the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Erickson v. Pardus*, --- U.S. ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam).  "[T]he factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8."  *Phillips*, 515 F.3d at 232; *see also Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint and matters of public record.  *See Pension*

4

*Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993),

*cert. denied*, 510 U.S. 1042 (1994).  The Court may also consider "undisputedly

authentic" documents where the plaintiff's claims are based on the documents and the

defendant has attached a copy of the document to the motion to dismiss.  *Id.*  The Court

need not assume that the plaintiff can prove facts that were not alleged in the complaint,

*see City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998), nor

credit a complaint's "bald assertions" or "legal conclusions."  *Morse v. Lower Merion Sch.

Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining

whether the plaintiff is entitled to offer evidence in support of the claims.  *See Scheuer v.

Rhodes,* 416 U.S. 232, 236 (1974).  The Court does not consider whether the plaintiff will

ultimately prevail.  *See id.*  The defendant bears the burden of establishing that the

plaintiff's complaint fails to state a claim upon which relief can be granted.  *See Gould

Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

## DISCUSSION

**I.      Appropriate Statutes of Limitations**

Contrary to Plaintiff's objection that the six (6) year statute of limitations in 28

U.S.C. § 2401(a) governs her claims (*see* Pl.'s Objections, Doc. 59, at 17-19), the

Magistrate Judge correctly set forth the applicable statutes of limitations.  While section

2401's six (6) year limitations period applies to Plaintiff's FOIA claims, *see Spannaus v.

United States Dep't of Justice*, 824 F.2d 52, 54-55 (D.C. Cir. 1987), her Rehabilitation

5

Act, Privacy Act, and *Bivens* claims are governed by two (2) year limitations periods.  *See* 5 U.S.C. § 552a(g)(5) (Privacy Act); *DiFrancesco v. Aramark Corp.*, 169 Fed. Appx. 127, 129 (3d Cir. 2006) (Rehabilitation Act); *Napier v. Thirty or More Unidentified Federal Agents, Employees or Officers*, 855 F.2d 1080, 1087 (3d Cir. 1988) (*Bivens* claims).

The limitations periods for Rehabilitation Act and *Bivens* claims begin to run "when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Wooden v. Eisner*, 143 Fed. Appx. 493, 494 (3d Cir. 2005) (*Bivens* claims); *Saylor v. Ridge*, 989 F. Supp. 680, 686 (E.D. Pa. 1998) (Rehabilitation Act).  The limitations period for Privacy Act claims begins to run when "the cause of action arises," 5 U.S.C. 552a(g)(5), meaning, when "the individual knows or has reason to know of the alleged error in the individual's record and the individual is harmed by the alleged error."  *Green v. Westphal*, 94 Fed. Appx. 902, 904 (3d Cir. 2004).  And the limitations period for FOIA claims begins to run when "the right of action first accrues," 28 U.S.C. § 2401(a), meaning "as soon as (but not before) the person challenging the agency action can institute and maintain a suit in court."  *Spannaus*, 824 F.2d at 56.

Although the Complaint in this action was filed November 30, 2006, no party has objected to the Magistrate Judge's use of June 16, 2006, the date Plaintiff originally filed these claims together with her Social Security appeal under a different case number, as the filing date for statute of limitations purposes.

## II.    Accrual of Plaintiff's Claims

### A.    Count I: Rehabilitation Act Claims

In Count I, Plaintiff alleges discrimination on the basis of disability in violation of section 504 of the Rehabilitation Act.  The Magistrate Judge concluded that Plaintiff knew or had reason to know of all of the injuries – that is, instances of discrimination – that are the basis of her action more than two (2) years before she filed her Complaint.  As a preliminary matter, Plaintiff objects to the Magistrate Judge's use of the "knew or had reason to know of the injury" standard because Defendants did not articulate this standard in arguments before the Magistrate Judge until their Reply Brief (Pl.'s Objections, Doc. 59, at 19-21); however, because Defendants raised their statute of limitations arguments in their Motion to Dismiss (Doc. 19), the Magistrate Judge, and likewise this Court, would apply the aforementioned standard whether or not Defendants ever quoted its exact language.  Plaintiff's objection in this regard is thus overruled.

Plaintiff also objects to the Magistrate Judge's characterizations of the incidents she alleges constituted this discrimination in violation of the Rehabilitation Act; nonetheless, Plaintiff's discussion of these objections does not identify any allegedly discriminatory actions that can be inferred from a liberal reading of her Complaint which occurred on or after June 16, 2004, that is, in the two (2) years prior to the date Plaintiff filed her Complaint.  (*See* Pl.'s Objections, Doc. 59, at 9-17, 25-26.)  Plaintiff does state in her Objections that "[d]ue to Defendants' willful and intentional with-holding of Plaintiff's records for over 8 years," she discovered for the first time on April 23, 2007, that an SSA Doctor, Joel Ross, "had listed an SSA impairment of Ms. Zied's psychological disability

7

back in 1996 which prevented her from knowing that she suffered an injury under 504 of the Rehabilitation Act of 1973 from that incident." (Pl.'s Objections, Doc. 59, at 55.) Plaintiff does not make clear, nor is it apparent to the Court, however, how discovery of this fact relates to discovery of any discrimination (injury) that Plaintiff allegedly suffered on the basis of being disabled.  Furthermore, Plaintiff's Complaint has not been amended to reflect any instances of discrimination that she indicates she discovered in April of 2007.[1]  This new information, therefore, has no bearing on the matter before this Court: the allegations in Plaintiff's Complaint.

Thus, Plaintiff's objections to the Magistrate Judge's application of the statute of limitations to her Rehabilitation Act claims will be overruled.

### B.    Count II: Due Process Claims

In Count II, Plaintiff alleges that all Defendants violated her rights under the procedural and substantive components of the Due Process Clause of the Fifth Amendment to the United States Constitution.  Magistrate Judge Blewitt noted that "the Plaintiff makes clear that she was well aware of the injuries she claims she suffered from the conduct of the SSA, that make up the basis of her *Bivens* claims in Count II, between 2001 and 2004." (R&R, Doc. 29, at 13.)  After reviewing Plaintiff's Complaint, this Court

---

[1]

Plaintiff states elsewhere in her Objections that this medical opinion "was first retrieved by Plaintiff in April, 2004, and actually read and understood, in 2007." (*Id.* at 68 n.11.)  As noted, use of the 2007 date as the time the alleged fraudulent concealment was revealed to Plaintiff renders such concealment irrelevant to the claims in the June 2006 Complaint.  And use of the April 2004 date would mean the alleged concealment was revealed to Plaintiff more than two (2) years before she filed her Complaint.  Under either scenario, her claims are untimely and not subject to equitable tolling.

agrees.  Further, Plaintiff's Objections do not address any alleged deprivations of due

process rights of which Plaintiff became aware in the two (2) year period preceding the

filing of her Complaint.  To the extent Plaintiff objects to the application of the

*Bivens* statute of limitations to her claims in Count II, therefore, her Objections will be

overruled.[2]

### C.    Count III: Privacy Act Claims

In Count III, Plaintiff alleges that the Defendants violated her right under the

Privacy Act of 1974 to gain access to certain medical records and information pertaining

to her – specifically, that information which led the SSA to erroneously conclude that Ms.

Zied was divorced and no longer had a child in her care – that were within the SSA's

records system.  (Compl., Doc. 1 ¶¶ 168-191.)  The Magistrate Judge noted that all the

requests for this information, which Plaintiff details in her Complaint, were made between

1999 and August 23, 2002.  (R&R, Doc. 29, at 18-19.)  August 23, 2002 is, according to

the Complaint, the date that Defendant Shopp sent Plaintiff a letter that was

unresponsive to Plaintiff's Privacy Act requests.  That letter stated simply "I do not have

the answer to your questions."  (Compl., Doc. 184-85.)  Plaintiff's Compliant indicates she

responded with letters on August 24, 2002 and August 31, 2002 reiterating her requests

for the information related to the SSA's erroneous conclusions about her.  At the time she

wrote these last letters, Plaintiff was aware of the alleged errors in her record.  And

_____

[2]

Plaintiff objects that Count II, in which she brings procedural and substantive
due process claims against all Defendants, is not a *Bivens* claim.  (Pl.'s Objections,
Doc. 59, at 34-35.)  But as Count II brings constitutional claims against federal
officials, these claims must proceed, if at all, in a *Bivens* action.  *See Bivens v. Six
Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

Plaintiff was allegedly harmed by those errors as early as July 23, 2002, when she received a letter informing her that she would lose certain benefits, some retroactive to December 2001, because the SSA believed her to be divorced and not longer taking care of a child entitled to Social Security benefits.  (*See* Compl., Doc. 1 ¶ 186.)  Her alleged injury occurred no later than October 2002, when she indicates these payments were stopped.  (*Id.* ¶¶ 192-96.)  Thus, the date on which Plaintiff knew or had reason to know of the alleged errors in her record and was harmed by the alleged errors, that is, the date that the statute of limitations began to run, was more than two (2) years before she filed her Complaint on June 16, 2006.  (*Id.* at 18.)  To the extent Plaintiff objects to the application of the statute of limitations to her Privacy Act claims, therefore, her Objections will be overruled.

### D.    Count IV: FOIA Claims

In Count IV, Plaintiff claims that Defendants Barnhart and the SSA acted inappropriately in withholding records she requested.  (Compl., Doc. 1 ¶¶ 204-235.)  Specifically, she states that "[o]n May 8, 1999, and prior to this, Ms. Zied was denied her own medical records under the Freedom of Information Act."  (*Id.* ¶ 214.)  The Complaint enumerates requests for medical records within SSA's control, made to the Hearings and Appeals Office on October 4, 1999, to the SSA's Freedom of Information Officer on November 8, 1999, and to the Harrisburg SSA office on August 16 and 24, 2002; the Complaint states that to date, Plaintiff has not received responses.  (*Id.* ¶ 215-24.)

As noted above, the six (6) year limitations period for FOIA claims begins to run when "the right of action first accrues," 28 U.S.C. § 2401(a), meaning "as soon as (but

10

not before) the person challenging the agency action can institute and maintain a suit in court." *Spannaus*, 824 F.2d at 56.  A person can institute and maintain a suit in court under FOIA only once she has exhausted available administrative remedies with respect to her FOIA claim.  *Id.* at 58.  Under the statute, however, exhaustion is deemed accomplished "if the agency fails to comply with the applicable time limit provisions of [the statute]."  5 U.S.C. § 552(a)(6)(C)(i).  FOIA includes two (2) "'time limit provisions' that trigger constructive exhaustion."  *Spannaus*, 824 F.2d at 58.  These are: an initial twenty (20) day period, exclusive of Saturdays, Sundays, and legal public holidays, to determine whether to comply with the request, and if there is an administrative appeal, a subsequent twenty (20) day period, exclusive of Saturdays, Sundays, and legal public holidays, within which to make a determination on that appeal.  5 U.S.C. § 552(a)(6)(A).  Either of these periods can be extended by up to ten (10) working days in certain "unusual circumstances." § 552(a)(6)(B).  In light of these provisions, exhaustion with respect to Plaintiff's October 4, 1999 and November 8, 1999 FOIA requests occurred – and the statute of limitations for those FOIA claims began to run – more than six (6) years before Plaintiff's June 16, 2006 Complaint.  Those claims are thus time-barred, and to the extent Plaintiff objects to the Magistrate Judge's recommendation that these claims be dismissed, her Objections will be overruled.

The Magistrate Judge concluded, however, that the FOIA requests Plaintiff alleges she made in August of 2002 are not barred by the six (6) year statute of limitations, and I agree.  Defendants indicate that there is reason to dismiss the FOIA claims regarding the August 2002 requests on the merits, namely, because the requests for information were not proper FOIA requests.  (Defs.' Response, Doc. 60, at 1 n.1.)  But without the benefit

11

of briefing by both parties on this issue, I will deny Defendants' motion to dismiss with regard to these claims and will adopt Magistrate Judge Blewitt's recommendation that these claims be recommitted to him for further proceedings (*see* R&R, Doc. 29, at 20 & n.10).

E.      **Count V: *Bivens* Claim Alleging FOIA violations**

Count V is a *Bivens* action against Barnhart and SSA employees Hawksworth, Shopp, and Breen.  In this count, Plaintiff seeks damages as a result of the Defendants' alleged violations of FOIA.  (Compl., Doc. 1 ¶¶ 236-45.)  Besides the fact that, as the Magistrate Judge noted, none of the alleged FOIA violations falls within the two (2) year statute of limitations applicable to *Bivens* claims, *Bivens* and its progeny provide a cause of action for damages against federal agents who have committed *constitutional* violations.  *See Bivens*, 403 U.S. at 389-97; *see also* ERWIN CHEMERINSKY, FEDERAL JURISDICTION 592-93 (Aspen Publishers 2003) (explaining that the Supreme Court in *Bivens* created a cause of action only for violations of the Fourth Amendment and that in later cases, the Supreme Court and lower federal courts recognized *Bivens* suits for violations of various other constitutional amendments).  For these reasons, and because Plaintiff's FOIA claims are more properly brought in Count IV, I will adopt the Magistrate Judge's recommendation to grant Defendants' motion to dismiss Count V of Plaintiff's Complaint.

F.      **Count VI: First Amendment Retaliation Claims**

In Count VI, Plaintiff alleges that Defendants Barnhart, Hawksworth, Shopp, and Breen violated her First Amendment rights by retaliating against her for engaging in

protected speech, including complaining to Social Security offices, in the course of pursuing her claim for Social Security benefits.  (Compl., Doc. 1 ¶¶ 246-65.)  First, Plaintiff alleges that although she had not at the time filed a civil action against the SSA, an SSA Branch Chief, in retaliation for Plaintiff's complaints, sent a letter on February 4, 2002, to the Harrisburg, Pennsylvania SSA office stating that Plaintiff had filed a civil action without exhausting all administrative appeals and requesting copies of any letter Plaintiff might have received in November of 2001 for use in having the civil action dismissed.  (*See id.* ¶ 251.)

The Magistrate Judge concluded that Plaintiff's claim of retaliation related to the February 4, 2002 letter began to run on or shortly after February 4, 2002.  Plaintiff objects to this conclusion, stating that it would have been impossible to know of this claim at this early date because the first she saw "any part of her record," presumably, including this letter, "was right before her hearing and submission of briefs to the ALJ [Administrative Law Judge] submitted in July, 2004."  (Pl.'s Objections, Doc. 59, at 59).  The important question in determining when the applicable statute of limitations began to run is the date Plaintiff became aware of an "injury" caused by this allegedly retaliatory letter.  Yet, Plaintiff has not alleged that this letter caused her any injury at all, aside from the general statement that she is suffering "irreparable injury as a result of Defendants' retaliatory acts."  (*See* Compl., Doc. 1 ¶ 265.)  Plaintiff's Objections regarding this letter will therefore be overruled.

Second, Plaintiff states that she made complaints of "the continual wrongful conduct by the Social Security Office in Harrisburg, PA" to a number of Social Security

offices and legislators, and that "[o]ut of further retaliation," the Defendants "continued to incorrectly assess Ms. Zied's rightful payments under Supplemental Security Income." (*Id.* ¶¶ 252-53.)  Plaintiff also alleges that when her husband wrote to the Oceanside, California SSA office requesting that Plaintiff be listed as his payee, that office responded, on September 6, 2002, that Plaintiff would have to apply in person at the nearest SSA office in order to become a payee.  (*Id.* ¶¶ 254-55.)  Plaintiff avers that on September 9, 2002, she wrote to that office requesting "the exact statute, rule, law or regulation that requires a person to be physically present to become a payee . . ." but that the SSA did not respond to her question.  (*Id.* ¶¶ 256-57.)  This course of events caused her injury, Plaintiff avers, because "SSA's 800 number continued to tell Ms. Zied that they could not speak to her concerning Mr. Campbell's Social Security record, because she was not a designated payee on his account."  (*Id.* ¶ 258.)  The Magistrate Judge concluded that the two (2) year statute of limitations for the claim regarding her status as a payee began to run no later than September 6, 2002, when Plaintiff first became aware of the SSA's refusal to designate her as a payee if she did not apply in person.  Plaintiff does not object to this conclusion, and I agree with the Magistrate Judge's recommendation that this claim is time-barred.

Third, Plaintiff argues in her Objections that the Magistrate Judge did not consider her allegation that her SSI payments were severed for fourteen (14) months beginning in October 2002 as an allegation of retaliation for her protected activity.  (Pl.'s Objections, Doc. 59, at 72; Compl., Doc. 1 ¶ 124.)  This allegation, while not included in Count VI of her Compliant, was incorporated therein by reference; nevertheless, the allegedly

retaliatory action, and Plaintiff's awareness of it, occurred more than two (2) years before Plaintiff filed her Complaint.  Plaintiff's Objection in this regard will therefore be overruled.

Fourth, Plaintiff indicates that the Magistrate Judge did not consider one instance of First Amendment retaliation that occurred within the limitations period: she claims that after she mailed a letter to the Appeals Council of the SSA on October 11, 2004 and appealed the ALJ's September 2004 decision, the Defendants adopted "an agenda" to interfere with her receipt of benefits.  (*See* Pl.'s Objections, Doc. 59, at 70-73 ("[B]ecause I just appealed a decision(s) . . . now there is an agenda to try and stop these payments?")).  The agenda to stop her payments, Plaintiff indicates, consisted of "burdensome and unnecessary requests" for information "to make sure that I am still eligible," even though such information "had already been given to them 8 months prior to [October 2004]."  (*Id.*; *see also id.* at 30-31.)  Plaintiff also indicates that she noted in October 2004 that she feared retaliation from the SSA, "due to past experiences with this particular office."  (*Id.* at 71.)

Plaintiff's Complaint, however, even when read liberally, does not include any allegations related to requests of information from her during or after October 2004, and Plaintiff has not amended her Complaint to include these allegations.  Therefore, her Objection in this regard will be overruled.

### G.    Conclusion

For the foregoing reasons, I will adopt the Magistrate Judge's recommendations regarding the accrual of Plaintiff's claims.  I will now turn to Plaintiff's objections to the recommendation that none of the statutes of limitations should be equitably tolled.

15

## III.    Equitable Tolling

Equitable tolling may be applied to the claims of a plaintiff who has "been

prevented from filing in a timely manner due to sufficiently inequitable circumstances."

*Hedges v. United States*, 404 F.3d 744, 751 (3d Cir. 2005) (quoting *Seitzinger v. Reading*

*Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999)).   "This occurs (1) where the

defendant has actively mislead the plaintiff respecting the plaintiff's cause of action; (2)

where the plaintiff in some extraordinary way has been prevented from asserting his or

her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the

wrong forum." *Id.* (internal quotation marks omitted).  For equitable tolling to apply,

however, the plaintiff must "exercise due diligence in preserving his claim."  *Id.*  "[M]ere

excusable neglect is not sufficient."  *Stephens v. Wynder*, No. 3:07-CV-0412, 2008 WL

906524, at *3 (M.D. Pa. Mar. 31, 2008).  Equitable tolling "is an extraordinary remedy

which should be extended only sparingly."  *Hedges*, 404 F.3d at 751.  The Magistrate

Judge rejected three (3) theories Plaintiff put forth in support of equitable tolling.

### A.    Equitable Estoppel

First, the Magistrate Judge concluded that equitable estoppel should not toll the

statutes of limitations because Plaintiff did not earlier pursue the claims she currently

brings in the wrong forum, and because Plaintiff "did not demonstrate any extraordinary

event that would have prevented her from filing the present action."  (R&R, Doc. 29, at

22.)  This Court agrees that Plaintiff has not demonstrated such an extraordinary event,

but Plaintiff objects that she did earlier pursue certain of her present claims in the wrong

forum: the SSA administrative proceedings.  In support, Plaintiff relies on ALJ Jonathan

16

L. Wesner's reference to a June 25, 2004 letter from Plaintiff.  (*See* Pl.'s Objections, Doc. 59, at 24-25 (citing Decision, Sept. 21, 2002, R. at 13 in Case No. 06-CV-1219.))  In that letter, Plaintiff identified "[t]he three issues which is what I believe I appealed [to the ALJ],".  (Letter from Mindy Jaye Zied-Campbell to Administrative Law Judge Wesner, June 25, 2004, R. at 480-81 in Case No. 06-CV-1219.)  Those issues are as follows.

     (1)    Reference to "discriminatory actions" in Administrative Proceedings

     First, Plaintiff referenced "[t]he underissuance of monies allotted to me as an individual under SSI, for the times between 9/01 and 9/02, due to actions by the SSA which were discriminatory towards me in their actions, their paperwork, and their false accusations, which leads me to believe I was allotted the incorrect amount."  (*Id.* at 2, R. at 481.)  This brief statement, with its conclusory allegations of "discriminatory" actions, does not reference discrimination on the basis of disability.  Indeed, as the period from September 2001 until September 2002 is the period that Plaintiff and her husband were living apart, the ALJ "conclud[ed] that the claimant [was] referring to the issue of deeming of her husband's income," and went on to analyze the proper calculation of Plaintiff's benefits during that time.  (Decision at 2, R. at 13 in Case No. 06-CV-1219.)  This issue that Plaintiff brought up the June 25, 2004 letter did not raise a claim of discrimination on the basis of disability in violation of the Rehabilitation Act such that equitable tolling of that claim could be justified under the "wrong forum" rule.

     (2)    Discussion of "Double Counting" in Administrative Proceedings

     The second issue Plaintiff raised in her letter to the ALJ was the SSA's allegedly improper calculation, "due to double counting," of the retroactive benefits it was paying her after having "inadvertently ceased my rightful benefits for 14 months."  (Letter, June

25, 2004, at 2, R. at 481 in Case No. 06-CV-1219.)  This statement does not raise any of the claims that Plaintiff raised in her Complaint in this case.

        (3)    <u>FOIA Claim in Administrative Proceedings</u>

       The third issue Plaintiff identified for appeal in her letter to the ALJ was her claim that the SSA "never supplied the medical documentation, which they received in support of my application from Friends Hospital.  Included in this is the SSA's refusal to supply me with the two reports received by Friends Hospital, which I requested in 1999, along with a psychiatrists letter stating I was incapable (due to mental illness) to pursue my appeal rights in 1996, after my reconsideration was turned down."  (Letter, June 25, 2004, at 2, R. at 481 in Case No. 06-CV-1219.)  Plaintiff also submitted to the ALJ a copy of a February 3, 2004 letter she wrote to the Harrisburg SSA Office indicating that she made her FOIA request on November 8, 1999 and that she "never received a reply or any appeal rights to this turndown of a Freedom of Information Act request."  (Letter from Mindy Jaye Zied-Campbell to Social Security Administration, Harrisburg, Pa, Feb. 3, 2004, R. at 482 in Case No. 06-1219; *see also* Table of Contents, Pet.'s Br., Office of Hearings and Appeals, July 8, 2004, R. at 155-57 in Case No. 06-CV-1219.)  This letter concluded as follows: "If you do not agree with my request, please consider this to be a formal request for an appeal before an Administrative Law Judge and let me know the procedure following this for a hearing to take place;" however, as this letter referred both to Plaintiff's FOIA request for the records and her request to reopen an earlier disability benefits application, it is not entirely clear that her FOIA request was the subject of her "formal request for an appeal."  (*See* Letter, Feb. 3, 2004, R. at 187.)  Attached to this February letter, and also submitted to the ALJ in July 2004, was a copy of Plaintiff's

18

November 8, 1999 FOIA request.  (*See* Letter from Mindy Jaye Zied-Campbell, to

Freedom of Information Officer, Social Security Administration, Nov. 8, 1999, R. at 485 in

Case No. 06-CV-1219.)

      "[C]ases interpreting the 'wrong forum' element of *Jones v. Morton* usually refer to

a peremptory filing in federal court prior to exhaustion of state-law claims," although it is

applicable in other situations as well.  *Satterfield v. Johnson*, 434 F.3d 185, 196 (3d Cir.

2006). The Third Circuit Court of Appeals described the "wrong forum" doctrine as "a

variation on the tolling concept that hinges not on the misconduct of the defendant, but

rather on the plaintiff's mistake in filing in the wrong forum."  *Lavallee Northside Civic

Ass'n v. V.I. Coastal Zone Mgmt. Comm'n*, 866 F.2d 616, 626 (3d Cir. 1989).  And

"equitable tolling is particularly appropriate in cases involving lay persons unfamiliar with

the complexities of administrative procedures."  *Gabrielle v. Barrett, Haentjens & Co.*, 663

F. Supp. 1187, 1191 (M.D. Pa. 1986).  However, not every mistake, even made by a *pro

se* litigant, justifies equitable tolling.  For example, in *Jones v. Morton*, the Third Circuit

Court of Appeals concluded that a petitioner who filed three (3) *pro se* habeas corpus

petitions in federal court without exhausting state court remedies could not avail himself

of the "wrong forum" doctrine because he "made no showing that he exercised

reasonable diligence in satisfying the exhaustion requirement."  195 F.3d 153, 160 (3d

Cir. 1999) (internal quotation marks omitted).  Notably, the court held that "[a]lthough it

appears that Jones was simply mistaken in his belief that he could obtain review in

federal court without having presented his claims to the state courts, his

misunderstanding of the exhaustion requirement is insufficient to excuse his failure to

comply with the statute of limitations."  *Id.*

Likewise, here, Plaintiff has not demonstrated anything more than a misunderstanding of the proper way to bring a FOIA claim.  As in *Jones*, this misunderstanding, alone, is insufficient to excuse her failure to comply with the statute of limitations.  And while the voluminous record in this and related cases is evidence of Plaintiff's diligence in pursuing this litigation generally, her claim for disability benefits in particular, the Court here must look specifically to Plaintiff's diligence in pursuing her statutory FOIA claim.  The FOIA statute provides that district courts of the United States have jurisdiction to enjoin an agency from withholding records and to order the production of improperly withheld records.  5 U.S.C. § 552(a)(4)(B).  Plaintiff has cited this statute, yet despite her efforts to obtain her records from the agency itself, she did not seek an injunction from an outside tribunal, which is the substance of the cause of action she now seeks to bring, until June 16, 2006.  This is more than six (6) years after her cause of action accrued, and more than a year after the ALJ's decision failed to consider the FOIA issue that she now avers she believed she had raised.

As such, and because equitable tolling "is an extraordinary remedy which should be extended only sparingly," *Hedges*, 404 F.3d at 751, I will deny Plaintiff's Objection in this regard and not equitably toll the statute of limitations regarding the FOIA claim arising out of Plaintiff's November 8, 1999 request.

### B.      Continuing Violations

Second, statutes of limitations can also be equitably tolled under the continuing violations theory.  Such tolling "may be appropriate in cases in which a Plaintiff can demonstrate that the defendant's allegedly wrongful conduct was part of a practice or pattern of conduct in which he engaged both without and within the limitations period."

20

*McAleese v. Brennan*, 483 F.3d 206, 218 (3d Cir. 2007).  To rely on the continuing

violations theory, a plaintiff must (1) "demonstrate that at least one act occurred within the

filing period," and (2) "establish that the conduct is 'more than the occurrence of isolated

or sporadic acts,'" i.e., the conduct must be 'a persistent, on-going pattern.'"  *Id.* (quoting

*West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754-55 (3d Cir. 1995)).  Moreover, the

continuing violations theory does not apply to injuries that occurred before the filing period

if the plaintiff was aware of those injuries at the time they occurred.  *Morganroth &*

*Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 417 n.6 (3d Cir. 2003).

The Magistrate Judge concluded that Plaintiff did not establish a pattern or practice of

discriminatory conduct and that she knew of her injuries at the time they occurred, and

thus could not rely on the continuing violation theory for any of her claims.  (R&R, Doc. 29,

at 23-24.)  Particularly in light of Plaintiff's vigilance in asserting her rights throughout the

course of this litigation, I agree that Plaintiff has not established the necessary elements

for tolling on the basis of continuing violations, and her Objections in this regard will be

overruled.

### C.      Fraudulent Concealment

Third, statutes of limitations can be tolled due to fraudulent concealment, which is

"an equitable doctrine that is read into every federal statute of limitations."  *Mathews v.*

*Kidder, Peabody & Co., Inc.*, 260 F.3d 239, 256 (3d Cir. 2001).  To benefit from equitable

tolling, however, plaintiffs have the burden of proving "(1) that the defendant actively

misled the plaintiff; (2) which prevented the plaintiff from recognizing the validity of her

claim within the limitations period; and (3) where the plaintiff's ignorance is not attributable

to her lack of reasonable due diligence in attempting to uncover the relevant facts."  *Cetel*

*v. Kirwan Fin. Group*, 460 F.3d 494, 509 (3d Cir. 2006).

Plaintiff makes two (2) arguments for equitable tolling based on fraudulent concealment.  The first argument arises from her claim, discussed above, that the SSA intentionally withheld the medical opinion of Dr. Joel Ross.  Plaintiff's Objections, however, do not make clear how the alleged withholding of Dr. Ross's assessment prevented her from timely recognizing the validity of any of the claims she now brings.  Indeed, she states that she received this information in April of 2007, nearly a year after filing her Complaint, and she has not since amended her Complaint to add new claims based on this information.

Her second argument is based on a claim that the SSA mislead her into believing she had to raise all her claims, even civil claims that were not part of her SSA case, within the SSA case itself.  In support of this argument, she cites a motion to dismiss that the SSA prepared in a separate case in the Northern District of California, in which Plaintiff asserts the Defendants "argued . . . that claims must go through the Administrative Process first."  (Pl.'s Objections, Doc. 59, at 32.)  The arguments in that unrelated brief do not constitute evidence that any of the Defendants "actively misled" Plaintiff.  Plaintiff has thus not met her burden of showing that fraudulent concealment justifies tolling the statutes of limitations that apply to any of her claims.

### D.    Mental Illness

Plaintiff also argues that one of her arguments for equitable tolling has thus far been ignored: the argument that the statutes of limitations should be equitably tolled because of her mental illness.  "Mental incompetence is not *per se* a reason to toll the statute of limitations."  *Nara v. Frank*, 264 F.3d 310, 317 (3d Cir. 2001), *overruled in part*

*on other grounds by Carey v. Saffold*, 536 U.S. 214 (2002).  But, "if a person's mental

deficiency actually affects his or her ability to timely file [a claim] . . . , it may constitute

extraordinary circumstances sufficient to toll the statute of limitations."  *Stephens*, 2008

WL 906524, at *4 (citing *Nara*, 264 F.3d at 317).  "[T]he general federal rule is that a

statute of limitations is tolled by reason of mental illness 'if the illness in fact prevents the

sufferer from managing his affairs and from understanding his legal rights and acting upon

them.'"  *Graham v. Kyler*, No. Civ. A. 01-1997, 2002 WL 32149019, at *3 (E.D. Pa. Oct.

31, 2002) (quoting *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996)).  This determination

focuses not on whether the plaintiff lacks information, but rather on whether the plaintiff

suffers from "the irremediable inability to access information and make use of it."  *Graham*,

2002 WL 32149019, at *3.  In another manner of articulating this principle, the Seventh

Circuit Court of Appeals has held that "proceed[ing] with a different legal action puts to

rest any issue as to . . . [the plaintiff's] general capacity to bring a legal action."  *Barnhart*

*v. United States*, 884 F.2d 295, 299 (7th Cir. 1989).

 Plaintiff has not demonstrated that she has met this stringent standard, particularly

in light of the numerous claims, motions, appeals, and briefs she has successfully and

timely filed.  The statutes of limitations will not be equitably tolled by reason of mental

illness or incompetence.


**IV.    Motion for Judgment**

 Finally, in light of the many exhibits that Plaintiff attached to her "Motion for

Judgment" (Doc. 22) and in light of her argument that judgment in her favor is warranted

because of "an abundance of evidence which Plaintiff has supplied," the Magistrate Judge

treated this motion as one for summary judgment rather than one for judgment on the pleadings and recommended this Court deny it as premature at the pleading stage.  I agree and will deny this motion without prejudice.

**V.      Motion for Possible Alternative Relief**

In her "Motion for Possible Alternative Relief" (Doc. 57), Plaintiff seeks to "extract" her Rehabilitation Act Claims (Count I) from her Complaint (Doc. 1) so as "to have the court consider a possible class action lawsuit and certification."  (Doc. 57, at 1.)  As the Court has concluded that Plaintiff's Rehabilitation Act claims are time-barred, this motion will be denied.

**CONCLUSION**

After careful consideration, the Court will adopt the Magistrate Judge's Report and Recommendation (Doc. 29) and deny Plaintiff's Motion for Possible Alternative Relief (Doc. 57).

An appropriate Order follows.

June 20, 2008_____                                 /s/ A. Richard Caputo_____
Date                                                              A. Richard Caputo
                                                                     United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

MINDY JAYE ZIED,

    Plaintiff,

        v.

JO ANNE BARNHART, COMM'R SOCIAL
SECURITY ADMINISTRATION; SOCIAL
SECURITY ADMINISTRATION; MR.
HAWKSWORTH, SSA EMPLOYEE; MS.
SHOPP, SSA EMPLOYEE; J.A. BREEN,
SSA EMPLOYEE; and ANY OTHER
UNKNOWN AND UNNAMED
INDIVIDUALS WHO MAY BE LIABLE,

    Defendants.

CIVIL ACTION NO. 3:06-CV-2305

(JUDGE CAPUTO)

(MAGISTRATE JUDGE BLEWITT)

## ORDER

    **NOW**, this   20th   day of June, 2008, upon review of Magistrate Judge Thomas M.

Blewitt's Report and Recommendation (Doc. 29), **IT IS HEREBY ORDERED** that:

    (1)    Plaintiff's Objections (Doc. 59) to the Magistrate Judge's Report and

              Recommendation are **OVERRULED**.

    (2)    The Report and Recommendation (Doc. 29) is **ADOPTED**.

    (3)    Defendants' Motion to Dismiss (Doc. 19) is **DENIED** as to Plaintiff's FOIA

              claims in Count IV that relate to requests for information made in August

              2002.

    (4)    Defendants' Motion to Dismiss (Doc. 19) is **GRANTED** as to all other claims

              in Plaintiff's Complaint.

    (5)    Plaintiff's Motion for Judgment in her favor (Doc. 22) is **DENIED**.

    (6)    Plaintiff's Motion for Possible Alternative Relief (Doc. 57) is **DENIED**.

(7)     This matter is **RECOMMITTED** to Magistrate Judge Thomas M. Blewitt for

further proceedings consistent with this opinion.


/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge